**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Case No. 26-CR-14**

**KENYARI M. SANFORD,**

**Defendant.**

---

## RECOMMENDATION AND ORDER

---

### 1. Procedural History

On January 27, 2026, a grand jury in this district returned a one-count indictment against Kenyari Sanford, charging him with unlawfully possessing a firearm after having been convicted of at least three violent felony offenses, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (ECF No. 1.) The portion of the charge alleging three prior convictions for a violent felony is an enhancement under the Armed Career Criminal Act (ACCA).

Sanford moves for a bill of particulars requiring the government to identify the prior qualifying offenses and to dismiss the ACCA enhancement because he claims that

none of the offenses in his prior federal case constitute a "violent felony" thereunder. (ECF No. 35.)

Sanford also moves to suppress all evidence from the search of a hotel room (where the firearm was found) and for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because he argues that the warrant affidavit leading to the search of the hotel room contains falsities or omits material information. (ECF No. 34.)

**2. Facts**

The indictment stems from a search warrant executed at a hotel room in Wauwatosa, Wisconsin, on March 1, 2025, during which law enforcement located a firearm. Wauwatosa Police Officer Mitchell Kriz swore to the affidavit in support of the application for that warrant. A Milwaukee County Circuit Court Judge signed the search warrant at 3:48 AM on March 1, 2025. (ECF No. 34-1 at 2.)

The following is a summary of the probable cause submitted in Officer Kriz's affidavit. (ECF No. 34-1 at 4.) Officers were dispatched to the hotel for a report of a male that "pulled a gun on two females" while inside a guest room. (*Id.*) Officer Kriz spoke with the two females, G.P. and L.M., as they were walking into the lobby saying they were on the phone with the police. (*Id.*) They said that they came from their friend T.H.'s hotel room and that T.H.'s boyfriend, later identified as Sanford, "pulled out a gun and 'cocked' it." (*Id.*) L.M. explained that Sanford "was mad that they were staying in the hotel room," and he said, "Since mother******s wanna play, you know how I am" and

"cocked the gun." (*Id.*) Officer Kriz and other officers responded to the hotel room and could hear T.H. and Sanford arguing. (*Id.*) Officer Kriz knocked on the door and announced police presence. (*Id.*) Sanford opened the door after approximately 20–30 seconds. (*Id.*) A criminal history check revealed that Sanford "has an extensive history of firearms related charges as well as being a convicted felon with prior felony charges that remain of record and unreversed." (*Id.*)

**3. Analysis**

**3.1 Motion for a Bill of Particulars**

Sanford moves for a bill of particulars identifying what prior convictions the government intends to rely upon. (ECF No. 35.) The government argues that Sanford's motion is untimely and inadequately supported, but it confirms the three predicate violent felony offenses it intends to offer are one count of Hobbs Act robbery and two counts of bank robbery from his prior federal case, *United States v. Sanford*, No. 15-CR-158-PP, 2019 WL 189244 (E.D. Wis. Jan. 14, 2019). (ECF No. 40 at 2–3.) Sanford did not file a reply brief in support of his motion for a bill of particulars.

Given that the government has supplied the requested information, the court finds the request for a bill of particulars is moot and will be denied.

**3.2 Motion to Dismiss**

Sanford moves to dismiss the ACCA enhancement because he contends that neither the Hobbs Act robbery nor the two bank robberies qualify as violent felonies.

(ECF No. 35.) Sanford concedes that *United States v. Hatley*, 61 F.4th 536 (7th Cir. 2023), "currently forecloses the argument that Hobbs Act robbery is not a violent felony." (ECF No. 35 at 2.) "While Sanford believes Hatley was incorrectly decided, he recognizes that it is binding precedent and thus brings the argument here to preserve the record." (*Id.*) The government asks the court to apply *Hatley* and reject Sanford's arguments. (ECF No. 40.)

The ACCA defines "violent felony" as any qualifying felony that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). "In determining whether an offense qualifies as an ACCA predicate, the court applies a categorical approach, focusing on the elements of the statute of conviction rather than the actual conduct of the particular offender." *Robinson v. United States*, 188 F. Supp. 3d 857, 859 (E.D. Wis. 2016) (citing *United States v. Ker Yang*, 799 F.3d 750, 752 (7th Cir.2015)).

The Seventh Circuit Court of Appeals determined in *Hatley* that the ACCA's enumerated crime of extortion encompasses Hobbs Act robbery using force against property because there is not "a 'realistic probability' that someone could commit a Hobbs Act robbery by using force against property without also committing generic extortion." 61 F.4th at 540. Because Hobbs Act robbery committed using force against a

person fits within the ACCA's force clause, the court concluded that a Hobbs Act robbery, in both its forms, fits within the ACCA and thereby qualifies as a violent felony for purposes of the § 924(e) sentencing enhancement. *Id.* at 538–40.

Sanford argues that *Hatley* was wrongly decided because (1) extortion requires consent while robbery does not; (2) no "realistic probability test" should have been required under the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022); and (3) "treating the consent distinction as immaterial creates a surplusage problem" such that "extortion" would encompass every act of "robbery" and "the separate robbery definition would be superfluous." (ECF No. 35 at 4–7.)

The Seventh Circuit had the opportunity to address these arguments in *Hatley* and rejected them. The court acknowledged that "[w]rongfully induced consent is one of only a few elements that sets generic extortion and Hobbs Act extortion apart from Hobbs Act robbery." *Hatley*, 61 F.4th at 539. But the court found that textual difference "to be 'superficial' in the specific context of Hobbs Act robbery using force against property." *Id.* The court also acknowledged *Taylor v. United States* and its requirement "to apply the categorical approach by comparing the prior offense of conviction with the sentencing enhancement statute." *Id.* at 537. The Seventh Circuit was silent as to any surplusage problem despite determining that Hobbs Act robbery by using force against property would also constitute generic extortion. *Id.* at 540.

Because Sanford has not presented any argument constituting "special justification" to deviate from the Seventh Circuit's decision *Hatley*, this court will not ignore that precedent. *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014) (observing that "*stare decisis* is a foundation stone of the rule of law, necessary to ensure that legal rules develop 'in a principled and intelligible fashion'" and "that 'any departure' from the doctrine 'demands special justification'") (citations omitted). The Seventh Circuit's conclusion in *Hatley* that Hobbs Act robbery is a predicate offense for purposes of violent felonies under the ACCA was based on the elements of the offenses rather than the facts of the case. Accordingly, Sanford's argument that his prior conviction for Hobbs Act robbery does not qualify as a violent felony is foreclosed by *Hatley*.

Sanford also argues that bank robbery does not qualify as a violent felony under the ACCA. (ECF No. 35 at 7–9.) He contends that the federal bank robbery statute, 18 U.S.C. § 2113(a), should not be divisible into separate force/intimidation and extortion offenses for categorical-approach purposes. (*Id.*) But he concedes that bank robbery qualifies under the ACCA's enumerated "extortion" clause under *Hatley* and contends that this court should not follow *Hatley* for the aforementioned reasons. (*Id.*)

The government responds that the majority of circuits have rejected the divisibility argument and, even if this court were not to recommend that approach, "the Seventh Circuit precedent in *Hatley* would still support the conclusion that bank extortion is a 'violent felony' for the reasons described above." (ECF No. 40 at 6–7.)

Because the court has not found special justification to deviate from *Hatley*, it is unnecessary to consider the divisibility question. Under *Hatley*, bank robbery qualifies as a violent felony under the ACCA's enumerated "extortion" clause.

Sanford has failed to demonstrate that his three prior convictions for Hobbs Act robbery and bank robbery do not qualify as violent felonies under the ACCA. Therefore, the court will deny his motion to dismiss the ACCA enhancement.

**3.3 Motion to Suppress**

Sanford moves for a *Franks* hearing and to suppress all evidence recovered from the search of the hotel room because he claims Officer Kriz intentionally, or at least recklessly, omitted material information from the warrant affidavit that led to the search and discovery of the firearm. (ECF No. 34.)

> A defendant is entitled to a *Franks* hearing—an evidentiary hearing regarding the veracity of information included in a search warrant application—if he can make a substantial preliminary showing that: (1) the warrant affidavit contained false statements, (2) these false statements were made intentionally or with reckless disregard for the truth, and (3) the false statements were material to the finding of probable cause.

*United States v. Sanford*, 35 F.4th 595, 597–98 (7th Cir. 2022).

Sanford argues that the affidavit omitted: (1) T.H.'s statement that she never saw or heard a firearm, and (2) G.P. and L.M.'s statements that they only heard the sound of a firearm "cocking" and did not visually observe a firearm. (ECF No. 34 at 11.) Officer Kriz's conversations with these three women were captured on body worn camera, and the government does not dispute that the statements were made or that Officer Kriz knew

this information. (ECF No. 39 at 14.) The government contends that, even if the statements were included in the warrant affidavit, the probable cause determination would not have changed. (*Id.* at 13–14.)

After Officer Kriz confronted Sanford and T.H. at the hotel room, he returned to the lobby and interviewed G.P. and L.M. separately. (ECF No. 34 at 5.) Both women stated that they did not actually see, but heard, a firearm. (*Id.* at 5–6.) G.P. recounted that she and L.M. were visiting T.H. and were asleep in the room when T.H.'s boyfriend arrived and told them to leave. (*Id.* at 5.) G.P. later said that Sanford was there the whole time. (*Id.*) G.P. also stated, unprompted, that the gun was black. (*Id.* at 5.) When Officer Kriz asked how she knew the color if she had not seen it, she said that she had seen it before. (*Id.*) As for L.M., she stated that T.H.'s boyfriend was upset with her and G.P.'s presence and that, when she told him she was leaving, he pulled out his gun and cocked it. (*Id.* at 5–6.) L.M. said she did not see the gun because she was looking down. (*Id.* at 6.) Officer Kriz then interviewed T.H., who averred that she did not see or hear a gun and that Sanford was not known to carry firearms. (*Id.* at 6.)

"[A]n omitted fact is material if its inclusion would have negated probable cause." *United States v. Jackson*, 179 F.4th 545, 551 (7th Cir. 2026) (quoting *Hart v. Mannina*, 798 F.3d 578, 592 (7th Cir. 2015)). To determine whether including an omitted fact would have negated probable cause, the court must "examine whether a hypothetical affidavit that included the omitted material would still establish probable cause." *Id.*

The facts of this case reflect that G.P. and L.M. made prompt contact with law enforcement after the alleged incident and were consistent in their reports that Sanford possessed a firearm. Sanford has offered no reason to question their familiarity with the sound of a gun "cocking." The suspected sound of a firearm is relevant and consequential to the probable cause analysis. *See, e.g.*, *Jackson v. City of Madison*, 176 F.4th 1005, 1017 (7th Cir. 2026) (finding probable cause to arrest for disorderly conduct and reckless endangerment based on "what sounded like gunshots" and knowledge of a "weapons history" with a report of the defendant "raising something above his head" but no visual identification of a firearm). Sanford also has not offered any basis to question the credibility of G.P. and L.M., whereas the credibility of T.H.'s statement that Sanford did not have a firearm is undermined by her romantic relationship with him. Therefore, even if the statements in question were included in the warrant affidavit, the affidavit still would have established probable cause to search the hotel room. Probable cause "is a practical, commonsense standard that requires only the type of fair probability on which reasonable people act." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013) (citations omitted).

Because the affidavit would have established probable cause even had the omitted information been included, no *Franks* hearing or suppression is warranted. *See United States v. Hancock*, 844 F.3d 702, 708 (7th Cir. 2016) (observing that "[i]f sufficient allegations existed warranting the search irrespective of the affiant's alleged errors, a

hearing is unnecessary and the motion should be denied") (citation omitted). Accordingly, the court will not address the government's contention that Sanford lacked standing to challenge the search of his girlfriend's hotel room.

**4. Conclusion**

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to dismiss and for a bill of particulars (ECF No. 35) be **denied**.

**IT IS FURTHER RECOMMENDED** that the defendant's motion to suppress and for a *Franks* hearing (ECF No. 34) be **denied**.

**IT IS FURTHER ORDERED** that, in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), any written objection to any recommendation herein or part thereof shall be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to timely object waives a party's right to review.

Dated at Milwaukee, Wisconsin this 21st day of September, 2026.

William E. Duffin
WILLIAM E. DUFFIN
U.S. Magistrate Judge