UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 26-cr-0014-bhl

v.

KENYARI SANFORD,

Defendant.

---

**DECISION AND ORDER**

---

Defendant Kenyari Sanford has filed a motion under 18 U.S.C. §3145(b) to vacate the detention order entered against him. (ECF No. 44.) A district court reviews a magistrate judge's detention ruling independently. *See United States v. Wilks*, 15 F.4th 842, 847 (7th Cir 2021). In conducting the review, the Court may "start from scratch" and hold a new hearing, or evaluate the record of the proceedings before the magistrate judge. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991). For the reasons that follow, the Court will deny Sanford's motion.

**BACKGROUND**

On January 27, 2026, the grand jury returned a single-count indictment charging Sanford with unlawfully possessing a firearm after he had been convicted of at least three violent felony offenses in violation of 18 U.S.C. §922(g)(1) and §924(e). (ECF No. 1.) He faces a mandatory minimum 15-year prison term under the Armed Career Criminal Act if convicted. (ECF No. 3 at 1.) Sanford made his initial appearance on these charges on February 26, 2026, before Magistrate Judge Duffin, who ordered him detained, although Sanford reserved his right to argue for release on bond at a later date. (ECF Nos. 3 & 4.) Because Sanford had state bench warrants to address, he "rested on the presumption" and did not initially contest detention. (ECF No. 18.)

On May 19, 2026, Sanford filed a motion for a detention hearing. In his motion, Sanford detailed developments in the state court cases against him and explained that there were no longer any warrants or unposted cash bond obligations that would keep him in state custody. (*Id.* at 2.) He described how, several weeks earlier, on March 24, 2026, he had made an appearance in

Milwaukee County Circuit Court in Case Number 2025CF5930 and that case was then dismissed. (*Id.* at 1.) He had also appeared in Case Number 2025CM3787, and the court in that case reinstated a $500 cash bond that Sanford had previously posted. (*Id.*) Sanford further appeared in a third case, Case Number 2025CM870, and the court reinstated a $650 cash bond that he had previously posted. (*Id.*) With respect to his federal detention, Sanford proposed that he be ordered released to live with his mother and to work for Five Good Men Community Care Group Home in Milwaukee as a "full-time direct support provider." (*Id.* at 2.)

Magistrate Judge Duffin scheduled a detention hearing for May 21, 2026. In advance of the detention hearing, the government filed a brief in support of detention arguing that Sanford was a danger to the community. (ECF No. 20.) Specifically, the government noted that Sanford had prior state felony convictions for attempted armed robbery with use of force; second degree endangering safety; and possession of a short-barrel shotgun/rifle. (*Id.* at 4 (citing Milwaukee County Circuit Case No. 2010CF5675).) It also reported that Sanford had been revoked in that case after absconding from supervision. (*Id.*) In addition, in 2016, Sanford was convicted of Hobbs Act robbery and two counts of bank robbery in this Court (15-cr-0158-pp) and sentenced to 54 months' incarceration. After serving his sentence and while on supervised release, Sanford was ultimately revoked and sentenced to an additional 20 months' incarceration followed by another 16 months' supervised release. (*Id.* at 5.) Sanford's supervision was discharged in November 2023. (*Id.*) The government also contended that Sanford's criminal history was indicative of his danger to the community and his multiple revocations demonstrated that he was unable to abide by the courts' conditions of release and argued for his continued detention. (*Id.*)

At the May 21, 2026 hearing, Sanford argued that he should be released on bond because he has multiple ties to the community, could live with his mother, and had full-time employment available to him. (ECF No. 22 at 2.) Sanford further submitted that he had successfully completed his supervision in 2023, suggested that the instant offense is not a crime of violence or drug trafficking, and emphasized that he has never been convicted of a domestic violence crime. (*Id.*) Sanford also noted that if released, he would seek medical care to remove the bullets from his arm (Sanford was shot six times in the left arm in November 2025) and preferred to recover from medical care at home. (*Id.*; ECF No. 2 at 2.)

Magistrate Judge Duffin ordered Sanford detained pending trial, explaining that he did not see evidence of Sanford "turning a corner" and found that the government had met its burden to

show by clear and convincing evidence that Sanford was danger to the community if released. (ECF No. 22 at 2–3; ECF No. 23.) Immediately after the hearing, Sanford asked his counsel, Federal Defender John Campion, to withdraw. (ECF No. 26.) His request was granted and, on June 4, 2026, Magistrate Judge Duffin allowed counsel to withdraw, after which, Attorney Joshua Uller filed a notice of appearance on June 8, 2026. (*See* ECF Nos. 26, 27, & 28.)

On October 5, 2026, Sanford, through replacement counsel, filed a motion to vacate the magistrate judge's earlier detention order under 18 U.S.C. §3145(b). In the motion, the defense explains that Sanford he is "seek[ing] release, in large measure, to obtain adequate medical care that he is not receiving as an inmate at the Kenosha County Detention Center." (ECF No. 44 at 3.) Sanford also contends that the government's argument for detention centers largely on either uncharged or unproven domestic violence allegations. (*Id.*) Sanford again proposes that he be released to live with his mother. (*Id.*)

On October 21, 2026, the government filed its response and contends that it has met its burden that Sanford is a danger to the community if he is released pending trial. (ECF No. 49.) The government notes that Sanford's arguments for release, including a proposal to live with his mother, preference to receive medical treatment in the community, and successful completion of his most recent period of supervised release, were previously submitted to and rejected by Magistrate Judge Duffin. (*Id.* at 1.) The government argues that since that initial bond hearing, the only change in Sanford's circumstances is that he has received medical treatment and care while at Kenosha County Detention Center (KCDC), although he argues that care was inadequate. (*Id.* at 2.) The government has submitted correspondence from KCDC detailing that Sanford has had seven off-site medical appointments between April 8, 2026 (less than two months after he was arrested and detained) and August 25, 2026 and had been assessed by KCDC mid-level medical providers onsite on seven occasions and by a nurse in the clinic on eleven occasions.[1] (ECF Nos. 49 at 8–9 & 49-2.) The government has also provided a 2025 video showing Sanford twice violently striking a woman, identified as the mother of Sanford's child, once in her head, and then punching her in the face with what appears to be a closed fist. (ECF No. 49-1.)

[1] On October 27, 2026, Sanford filed his reply complaining in part that the government should have filed the Kenosha County Detention Center correspondence under seal as it discussed his medical records. (ECF No. 50 at 2.) The next day the government filed a motion to seal the correspondence and the Court granted the motion on October 29, 2026. (ECF Nos. 52 & 53.)

## LEGAL STANDARD

A defendant charged with an offense may be released on personal recognizance, released on conditions, temporarily detained, or detained. 18 U.S.C. §3142(a). Detention is appropriate if no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. §3142(e)(1). In making a detention determination, the Court considers the nature and circumstances of the offense charged, including whether the offense involves a controlled substance, firearm, explosive, or destructive device; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. §3142(g).

A detention decision is not necessarily final. A defendant ordered detained can seek to reopen the detention hearing if he presents new information that has a material bearing on the issue whether there are conditions of release that will reasonably assure his appearance and the safety of the community. *See* 18 U.S.C. §3142(f)(2). Under 18 U.S.C. §3145(b),"[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly."

## DISCUSSION

Based on the record presented to Magistrate Judge Duffin, and after considering the parties' briefing, the Court concludes that Sanford's continued detention is warranted in this case. Although Sanford is entitled to this Court's *de novo* review of Magistrate Judge Duffin's detention order, he has not identified any "information . . . not known . . . at the time of the [initial] hearing . . . that has a *material* bearing on the issue whether there are conditions of release that will reasonably assure [Sanford's] appearance . . . and the safety of any other person and the community." 18 U.S.C. §3142(f) (emphasis added) & §3145.

The only new information presented by Sanford is his contention that he is receiving inadequate medical care at KCDC. Sanford states that he did not see a doctor until after five months of detention and when he did, the doctor diagnosed an infection. (ECF No. 44 at 2.) The record, however, confirms that Sanford received a medical off-site appointment on April 8, 2026, less than two months after his detention on February 26, 2026, and since that appointment, he has

been receiving regular medical attention. (ECF No. 49-2 at 3.) Although Sanford believes the submitted correspondence is "neither complete nor reflective of the care he has been receiving," he acknowledges that he recently had surgery and will need another surgery to remove the remaining bullet debris in his arm. (ECF No. 44 at 3; ECF No. 50 at 1.) From the submitted KCDC correspondence, Sanford appears to be receiving adequate medical treatment and nothing about his current medical condition warrants his release into the community, particularly given the evidence that he poses a danger if released.

The Court, having reviewed the record, like Magistrate Judge Duffin and pretrial services, finds that there are no conditions or combination of conditions that will reasonably assure the safety of the community given Sanford's prior violent conduct. The Court also concludes that the other Section 3142(g) factors also favor detention. As previously noted, the charged offense – felon in possession of a firearm as an Armed Career Criminal – is serious and carries a 15-year mandatory minimum. The weight of the evidence against Sanford is strong. On March 1, 2025, Wauwatosa police officers responded to an altercation at a hotel. (ECF No. 49 at 5.) Two women, who had been in a hotel room with Sanford and another woman, reported to the officers that Sanford had pulled a gun on them and cocked it. (ECF No. 44 at 3; ECF No. 49 at 5.) The women described Sanford as "aggressive" and "violent." (ECF No. 49 at 5.) Officers went to the hotel room and Sanford answered the door after the officers knocked and announced themselves. (*Id.*) The officers later obtained a search warrant for the hotel room and recovered a Taurus 9mm pistol in a closet on top of a luggage rack under a pile of towels. (*Id.*) The firearm was loaded with a bullet in the chamber. (*Id.*) Swabs from the firearm were submitted to the Wisconsin crime lab, and a DNA analyst determined that there was "Very Strong Support" that Sanford's DNA was on the trigger of the Taurus pistol. (*Id.*) The weight of the evidence shows that Sanford, a convicted felon prohibited from carrying a firearm, pointed a cocked gun at two women. He now faces a severe mandatory minimum.

The other factors also weigh in favor of detention. Sanford's criminal history includes state felony convictions for attempted armed robbery with use of force, second degree endangering safety, and possession of a short-barreled shotgun/rifle and a federal conviction in this district for Hobbs Act robbery (one count) and bank robbery (two counts). (ECF No. 2 at 4–5.) In the state case, Sanford was revoked after absconding from supervision. (ECF No. 20 at 4.) In the federal case, Sanford was also revoked. (*Id.* at 4–5.) Sanford also acknowledges that he has two

misdemeanor charges pending and maintains his innocence. (ECF No. 44 at 3.) The charges against Sanford allege physical violence against his children's mothers. (ECF No. 49 at 6); *see* Milwaukee County Circuit Court Case No. 2025CM870 (charges pending: Battery–Domestic Abuse Assessments and Disorderly Conduct–Domestic Abuse Assessments); *see also* Milwaukee County Circuit Court Case No. 2025CM3787 (charges pending: Battery–Domestic Abuse Assessments and Disorderly Conduct–Domestic Abuse Assessments). A jury trial is scheduled in both cases for February 8, 2027. *See id*. The video evidence submitted by the government shows Sanford in 2025 violently striking the mother of his child, twice, demonstrating that Sanford is a danger to the community. (ECF No. 49-2.) Sanford's reply does not address this video.

Finally, Sanford notes correctly that in our society liberty is the norm and detention prior to trial is a limited exception. (ECF No. 50 at 2 (citing *United States v. Salerno*, 481 U.S. 739, 755 (1987)).) But there is no indication that the magistrate judge's detention decision violated these precepts. After a *de novo* review of the record, the Court agrees with Magistrate Judge Duffin that Sanford should be detained. The Court concludes that no hearing is necessary because the government has clearly carried its burden of proving that Sanford is a danger to the community.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Vacate Detention Order, ECF No. 44, is **DENIED**.

Dated at Milwaukee, Wisconsin on November 2, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge